775 F.2d 1440
 3 Fed.R.Serv.3d 325
 Clara CARLUCCI, individually and as Special Administrator of
the Estate of Carlucci, Alberto, Deceased, Plaintiff,
v.
PIPER AIRCRAFT CORP., INC., a corp., Defendant,
Francis A. Anania, Appellant.
 No. 84-5576.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 12, 1985.
 
 Blackwell, Walker, Gray, Powers, Flick & Hoehl, James E. Tribble, Miami, Fla., for appellant.
 Joseph W. Womack, Miami, Fla., A Ward Wagner, Mark Clark, Richard A. Kupfer, West Palm Beach, Fla., for plaintiff.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and JOHNSON, Circuit Judges, and HOFFMAN*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Appellant Francis A. Anania was attorney for the defendant, Piper Airlines, in this consolidated wrongful death action, and was found by the court below to have acted in bad faith by inter alia, unilaterally terminating document production sessions ordered by the court and making conflicting representations as to the existence of certain documents. The district court gave Mr. Anania repeated warnings that his conduct was unacceptable and held out the possible imposition of sanctions in an attempt to secure his cooperation in the discovery process, but to no avail. Following settlement and entry of judgment for the plaintiff Carlucci on the claim underlying, the trial court issued a show cause order directing Anania to appear at a hearing to determine whether disciplinary action or sanctions should be imposed under Fed.R.Civ.P. 37. After holding the hearing and considering affidavits submitted on his behalf, the district court entered an order assessing Anania a $10,000 fine.
 
 
 2
 On appeal Anania presents us with four issues. He argues: 1) that the procedure followed by the court below imposing sanctions was in violation of the Local Rules of Disciplinary Enforcement enacted by the District Court for the Southern District of Florida; 2) that the imposition of sanctions was in violation of Anania's due process rights as guaranteed by the Fifth Amendment to the United States Constitution; 3) that the findings of misconduct by the court below were not supported by legally sufficient evidence; and 4) that the amount of the sanction imposed was not supported by the record and was grossly excessive.
 
 
 3
 We find that as to issues 1), 2) and 3) there is no merit and we AFFIRM; as to issue 4) we must REVERSE AND REMAND solely to require the district court to provide support for the amount of fine or cost imposed as required by Fed.R.Civ.P. 37.
 
 
 4
 I. Facts.
 
 
 5
 The facts that gave rise to this appeal are convoluted, constituting almost 2600 pages of record contained in twenty volumes. They accordingly must be set out at some length.
 
 
 6
 The initial pleadings in this case were filed in December of 1978. The subject of the lawsuit was the 1976 crash, in Ireland, of a plane manufactured by the defendant Piper Aircraft. In September of 1981 Clara Carlucci, representing the estate of her husband Alberto, a victim of the crash, filed requests for the production of a variety of documents in Piper's possession relating to the controversy. Piper, through Anania, objected to this request on several grounds, arguing that the documents were privileged and that production would impose an excessive burden. Carlucci filed a motion to compel discovery, and both sides submitted briefs on the issues to the district court. On December 31, 1981, the court, James C. Paine, J., entered an order listing categories of documents that were appropriate for production. Included were Piper's investigative reports. Those for accidents that occurred after the 1976 Ireland crash were expressly exempted from discovery.
 
 
 7
 Subsequent disputes between counsel impeded the production of any documents under the December 1981 order and required a hearing before Judge Paine on May 18, 1982. At that hearing, Anania was asked whether Piper, his client, had produced the requested accident reports. Anania replied:
 
 
 8
 Your Honor, I haven't produced any of the documents, because I was told such production would be unacceptable; and your honor, I see no practical reason to proceed with the compilation of all these documents if at some future time the plaintiff was going to reject it, and your honor was going to say go back and do it all over again.
 
 
 9
 At the end of the hearing, the court ordered Piper to produce the documents previously listed in the December 1981 order. Carlucci's counsel suggested meeting at Piper's plant in Lock Haven, Pennsylvania, to examine the originals of the documents and make copies of those needed. Piper agreed. The court instructed Carlucci's counsel to draft a proposed order containing the substance of the court's instructions to the parties at the hearing. This was done on June 2, with Piper submitting a letter on June 6 opposing the requirement that it produce the originals. Piper proposed to produce copies, and to make originals available for inspection if the copies were illegible. The district court's order was signed on June 11; it required the production of originals. Production was to begin on June 14 and to continue "until the production set forth herein is completed."
 
 
 10
 Lock Haven.
 
 
 11
 Anania claims not to have received the court's order until the morning of June 14, the day in which discovery was to begin. Copies of the requested documents had been assembled during the previous week, but the originals were scattered throughout various offices at the Lock Haven plant; Anania claimed Piper was too short of manpower to devote additional personnel to the task of recollecting all of the original documents. He offered to produce originals for copies which were not legible, but Carlucci was unsatisfied. Attempts to reach Judge Paine telephonically failed, leading Anania to contact Judge Malcolm Muir of the United States District Court for the Middle District of Pennsylvania. Judge Muir agreed to resolve the dispute if Carlucci filed a written motion and brief and if Piper filed a reply brief within three days. Carlucci did not pursue this course. Anania terminated the Lock Haven discovery session after only one day of production and of document marking by returning to Miami without explanation. He now argues that he terminated the production session because he had underestimated the time necessary for production and had conflicting commitments in Miami. He further argues that Carlucci suffered no prejudice as a result of receiving copies at the Lock Haven session, since none were challenged on authenticity grounds when the originals were finally produced at later discovery sessions in Chicago and West Palm Beach.
 
 
 12
 Based on the difficulties encountered at the Lock Haven session, Carlucci filed her first motion to impose sanctions and to strike Piper's answer. Piper filed a request for a hearing and for a status conference. No hearing was held, but a transcript of the Lock Haven session and briefs from both parties were considered by the court. On November 17, 1983, Judge Paine entered an order finding that both Piper and Anania had acted in bad faith in failing to comply with the June 11, 1982 discovery order.
 
 
 13
 Defendant's counsel ... shares, in large measure, the blame for noncompliance with this Court's order, for it was he who oversaw the proceedings in Lock Haven. His conduct during that session deviated from what could be characterized as legitimate and vigorous representation of one's client. He was uncooperative, verbally abusive to Plaintiffs' counsel, and obstructive, effectively thwarting the discovery demanded by Court order. This Court finds that he acted in bad faith ....
 
 
 14
 This order referred specifically to Anania's response to Judge Paine on May 18, 1982, concerning production of Piper's accident investigation reports, stating that Piper had not produced "any of the documents." The court found this response to be in conflict with a subsequent representation that no such reports existed, for the prior representation was taken to imply that the documents did in fact exist.
 
 
 15
 The court ordered sanctions imposed on Piper, including the completion of production of original documents at a time and place convenient to Carlucci's counsel. A ruling on sanctions against Anania, as distinct from Piper, was expressly reserved, "pending Plaintiffs' submission of expenses, including attorneys' fees, incurred as a direct result of the Lock Haven proceedings of June 14th and June 15th, 1982." Carlucci did not file an accounting of these expenses.
 
 
 16
 Piper filed three separate motions in response to Judge Paine's order. (1) A motion for rehearing was filed on November 28. This motion was denied by Judge William J. Campbell, Senior United States Judge for the Northern District of Illinois.[1] (2) A motion for reconsideration was filed on November 30. It too was denied for failure to specify any factual error. Judge Campbell reviewed the Lock Haven transcript and concluded that Judge Paine's findings were correct; he characterized the motion for reconsideration as a "delaying tactic." (3) An emergency motion for a stay, filed December 1, was heard and denied by Judge Campbell. This Court affirmed Judge Campbell's denial on appeal in an order entered on December 5, 1983.
 
 
 17
 Chicago.
 
 
 18
 A second production session began in Chicago on December 5, 1983. It continued for ten days, though not without dispute. The parties filed several motions with Judge Campbell, who ruled on them promptly. On December 16, another hearing was held before Judge Prentice H. Marshall of the United States District Court for the Northern District of Illinois on Piper's motion to quash various subpoenas. The motion was granted and, according to Anania, the court directed that future discovery disputes should be resolved in the District Court in Florida. The court below characterized this venue ruling as simply a "suggestion" and further noted that Judge Marshall continued the hearing until December 21.
 
 
 19
 On December 21 Anania failed to appear before Judge Marshall. He had apparently returned to Florida following the December 16 hearing, leaving Carlucci's attorneys, their expert witness, paralegals, and the court reporter waiting in Carlucci's attorney's law office for discovery to resume. On December 19 Piper had filed in the Southern District of Florida a motion for a protective order pursuant to Fed.R.Civ.P. 30(d)[2] claiming that a deponent, Mr. Reeder, was being harassed by Carlucci's lawyer to the detriment of the deponent's health. Anania now further asserts that both he and the deponent were "the target of abusive comments and threats of arrest and even extradition."
 
 
 20
 Carlucci learned via telegram sent on December 19 that the document production session had been terminated pursuant to Rule 30(d). In the telegram, Piper again offered to produce copies of the documents already assembled. Carlucci's response was to file a second motion to strike Piper's answer.
 
 
 21
 On December 28, 1983, a pretrial conference was held before Judge Campbell. Piper's Rule 30(d) motion was denied. A ruling on Carlucci's motion to strike was deferred. And the court found that Anania had improperly terminated the Chicago production session. Regarding sanctions, the court stated:
 
 
 22
 Now, as to sanctions, full authority in that has been invested in me, and I will impose the sanctions outlined by Judge Paine as to costs and fees arising out of the Pennsylvania ill-fated production session.
 
 
 23
 However, I will reserve finding on those until after we dispose of all discovery and maybe until after the case.
 
 
 24
 The defendants have already been found in bad faith by Judge Paine.
 
 
 25
 Naturally that calls for sanctions. When I consider that matter, I will consider your conduct from here hence forward, and advise defense counsel, who has already been held in bad faith, that [he] may purge [himself] of the necessity for further sanctions.
 
 
 26
 I'll decide that when I see how you cooperate in the discovery process from now on.West Palm Beach.
 
 
 27
 Judge Campbell appointed a retired Florida state judge, James R. Knott, as special master to oversee the completion of discovery in West Palm Beach. Document production resumed before Judge Knott on January 4, 1984. On the first day, Mr. Reeder testified that he had still not inquired of Piper's other employees (one of whom had travelled to Ireland to assist the Irish government in making its official report on this accident) whether they possessed documents falling within Carlucci's request. Further disputes caused production to cease on January 10, after which Carlucci filed a third motion to strike.
 
 
 28
 At a hearing before Judge Knott on January 27, an issue arose as to the production of investigative reports called the "Bressler documents" concerning an accident that occurred after the 1976 Ireland crash. Piper argued that the Bressler documents were not discoverable under the order Judge Paine had entered on December 31, 1981, but stated that it was prepared to produce the documents if required to do so. Judge Knott ordered that the documents be produced by February 6. On February 7, Piper appealed Judge Knott's order to the district court, which court dismissed the appeal as frivolous. The documents were eventually produced in piecemeal fashion.
 
 
 29
 On March 7, Judge Knott filed a report detailing problems with Anania and noting Piper's "indifference" in responding to production requests. Anania filed an affidavit disputing Judge Knott's account on March 23. Another hearing was held before Judge Campbell and briefs were filed by the parties.
 
 
 30
 On March 30, 1984, Judge Campbell entered an order granting Carlucci's motion to strike and found liability on the part of Piper. Carlucci v. Piper Aircraft Corp., Inc., 102 FRD 472 (S.D.Fla.1984) (Mem.) He premised his order on findings that Piper had deliberately destroyed certain documents and, along with Anania, had engaged in conduct designed to obstruct the discovery process. The order referenced Anania's answer to Judge Paine's question of May 18, 1982, concerning the accident investigation reports, and concluded that Anania either had not inquired of Piper as to the existence of such reports before objecting to Carlucci's request for production in the first instance, or had deliberately misled Judge Paine at the May 18 hearing, for his reply then had implied that such documents did exist. According to the court, either would support "the imposition of more severe sanctions." The order further criticized Anania for making "false" and "contemptuous" representations to the court concerning Piper's repeated failure to produce the Bressler documents. These representations were to the effect that Piper was not required to produce the documents and, in any event, Carlucci could obtain answers to her interrogatories from other sources.
 
 
 31
 Piper then settled the remaining issue of damages in the underlying lawsuit. At a hearing before Judge Paine on April 10, the settlement was entered as a final judgment in the amount of $3,800,000. Anania's law partner then requested the court to retain jurisdiction so that Anania could present evidence concerning the adverse findings as to his conduct made during the discovery proceedings. Judge Paine responded that this matter would remain open after final judgment, and he noted:
 
 
 32
 It does seem to me it is fair to have some sort of a hearing, and an opportunity for [Anania] to explain ... I regard it as a pretty serious matter, and there, hopefully, are explanations that will at least mitigate the situation to some extent.
 
 
 33
 On April 26, Judges Paine and Campbell entered an order to show cause why sanctions or disciplinary action should not be imposed on Anania. The show cause order specifically referred to the November 17, 1983 and March 30, 1984 orders of the court finding Anania to have acted in bad faith. Anania filed a motion in response arguing that the show cause order had not informed him of the specific conduct under review and thus denied him procedural due process under the Fifth Amendment. Further, assuming formal charges would be filed, Anania requested that they be heard by a district judge who had not previously been involved in the underlying lawsuit.
 
 
 34
 Anania testified at a hearing before Judges Paine and Campbell on May 4 and submitted additional evidence by way of affidavits. His testimony comprised an attempt to explain his prior conduct as acceptable under the circumstances, which he alleged included comparable conduct on the part of Carlucci's attorney. He requested that the court remove from its prior orders the references to his conduct as having been in bad faith.
 
 
 35
 Following the hearing, Anania filed a motion to vacate the show cause order and limit the purpose of the hearing that had already been held. He alleged that the show cause order had not been entered in accordance with Rule 5 of the Local Rules of Disciplinary Enforcement for the Southern District of Florida. He also restated the procedural due process claims previously asserted in his response to the show cause order. Both parties filed briefs addressing these and other issues.
 
 
 36
 On June 28, 1984, Judges Paine and Campbell entered an order rejecting both Anania's procedural due process claims and the applicability of Local Rule 5. The court then considered and rejected Anania's attempts to explain his past conduct as not having been in bad faith. Some of the explanations were found to be inconsistent with or otherwise lacking support in the record. Other explanations were found to be incredible. The court concluded that Anania had obstructed discovery and violated its orders. Citing deterrence as the justification and finding it "obvious" that Anania had been paid a "considerable" fee for his services in representing Piper, the court assessed costs and attorney's fees in the amount of $10,000. Finally, the court found the record to be "insufficient" to determine whether Anania had been involved in or had knowledge of Piper's intentional destruction of requested documents. Believing further inquiry to be warranted, however, the court referred the matter to the Grievance Committee for the Southern District of Florida.
 
 
 37
 II. Analysis.
 
 
 38
 In reviewing this case on appeal we find that the true issues of consequence have become confused. The court below has assessed costs against Anania under Rule 37, but has framed its order as a defense of the power of a federal court to impose sanctions. Anania apparently does not contest the authority of the court to do what it did; he asks rather that certain procedural requisites be followed. The attorneys on both sides in their briefs seem predominantly interested in trading pejorative and vituperative epithets when the adequacy of the process tendered by the district court is the important question. We attempt to clarify the issues and resolve this appeal by considering first whether courts have the authority, by whatever means derived, to impose sanctions; second, whether there is substantial evidence to support the imposition of sanctions on Anania; third, if sanctions are warranted, whether they were imposed consistent with due process; and fourth, if there is substantial evidence of attorney misconduct, whether the amount of costs assessed by the district court was arrived at by means consistent with the requirements of law.
 
 
 39
 A. Sanctions and Court Power.
 
 
 40
 It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant. Congress enacted 28 U.S.C.A. Sec. 1927 (1985) permitting the court to impose personal liability on an attorney for "excess costs, expenses, and attorneys' fees reasonably incurred" where that attorney "unreasonably and vexatiously" multiplies the pleadings in any case. Beyond this, the Federal Rules of Civil Procedure provide, in Rule 37(b), that failure by a party or his counsel to make or cooperate in court-ordered discovery may, at the trial court's discretion, lead to the imposition of sanctions of several sorts. Relevant to this appeal is the final clause of Rule 37(b)(2) providing for assessment of fees and expenses resulting from the failure of a party or his attorney to abide by court orders to produce documents.[3]
 
 
 41
 Even absent explicit legislative enactment, deeply rooted in the common law tradition is the power of any court to "manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 888 n. 10 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); accord, Roadway Express Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) ("There are ample grounds for recognizing, however, that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel"); Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89, 8 L.Ed.2d 734 (1962) (courts have "inherent power" to dismiss an action sua sponte as a sanction in order to "achieve the orderly and expeditious disposition of cases"); 4 W. Blackstone, Commentaries, * 285-* 86 (1765) (noting power to discipline
 
 
 42
 for "rude and contumelious behaviour" that "must necessarily be as ancient as the laws themselves. For laws without a competent authority to secure their administration from disobedience and contempt would be vain and nugatory"). But see, Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958) (Rule 37 is the exclusive source of authority for sanctions in discovery abuse) (obiter dictum ).
 
 
 43
 All of these bases, relied upon by the court below, support its assertion of power to impose sanctions for bad faith conduct during discovery. But Anania challenges the court's authority to impose a sanction only indirectly. He argues rather that there is insufficient evidence on the record to support a finding of bad faith conduct and that proper procedural protections were denied when, without adequate notice and before a partial tribunal, he was found to have acted in bad faith.
 
 
 44
 B. Substantiality of Evidence of Bad Faith.
 
 
 45
 The Supreme Court has stated in language plain and firm that the standard of review for an appellate court in considering an appeal of sanctions under Rule 37 is sharply limited to a search for abuse of discretion and a determination that the findings of the trial court are "fully supported by the record." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43, 96 S.Ct. 2778, 2780-81, 49 L.Ed.2d 747 (1976) (per curiam ); Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 482 (11th Cir.1982) (per curiam ), cert. denied, 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983); Griffin v. Aluminum Corp. of America, 564 F.2d 1171, 1172 (5th Cir.1977) (per curiam ). The Court in National Hockey League admonished the Courts of Appeals not to exhibit "lenity" even in the face of "outright dismissal as a sanction for failure to comply with a discovery order" because Rule 37 sanctions were designed "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." When reviewing allegations that the findings of a district court are clearly erroneous we are guided by the language of National Hockey League and by the definition provided by the Supreme Court in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), that a finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
 
 
 46
 Here, a careful review of the record as a whole shows no reversible error on the question of misconduct. In fact the record is legion with Anania's misconduct and bad faith. A few examples suffice to encapsulate the record presented:
 
 
 47
 (1) Anania was found to have wrongfully terminated the Lock Haven discovery production sessions. He claimed good faith disputes remained about the scope of the requests for production when he decided to terminate this session and argued that on short notice the burden of producing document originals was excessive. Yet the district court had already resolved the dispute over originals expressly in Carlucci's favor, and Anania did not make even a "best effort" attempt to comply. He even went so far as to instruct a witness "not to respond to questions regarding the availability of originals" when in fact the document custodian had admitted that production of the originals "would only take a few minutes." On more than one occasion the court had considered the scope of the request and ordered Piper to produce original documents for discovery. Instead Anania flew off to meet "prior commitments" in Miami. The district court properly found that the burden was on Anania to seek relief from the court in the event of a scheduling conflict. He is "not free to ignore the Order [of the district court] and to impose his own time constraints on the proceedings." Order of the District Court, Record Excerpts at 182; accord, Guidry v. Continental Oil Co., 640 F.2d 523, 533-34 (5th Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); In re Sutter, 543 F.2d 1030, 1034-35 (2d Cir.1976).
 
 
 48
 (2) Anania likewise wrongfully terminated the production session held under court order in Chicago. He contends first that the Rule 30(d) motion was filed in good faith to protect his deponent from the abuse of Carlucci's counsel and second that he was directed by Judge Marshall to file that action in the District Court in Florida. Even if we were to accept the first excuse that his failure to appear was justified because he was in Florida seeking relief under Rule 30(d), there is no authority of which we are aware holding that a Rule 30(d) motion can be filed when the parties are already under a direct court order to continue the deposition until completed. The Supreme Court articulated the proper procedure to be followed in instances such as this in Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L.Ed.2d 574 (1975), where it held that "all orders and judgments of court must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal." Accord, Link, 370 U.S. at 633, 82 S.Ct. at 1390; San Antonio Telephone Co. v. American Tel. & Tel. Co., 529 F.2d 694, 694 (5th Cir.) (per curiam ), cert. denied, 429 U.S. 999, 97 S.Ct. 527, 50 L.Ed.2d 610 (1976). There was no stay here, and that obtainable under Rule 30(d) was properly brought before Judge Marshall who had retained jurisdiction over this matter by continuing the hearing to December 21.
 
 
 49
 As to the second justification, we frankly find it incredible that Anania could so interpret the status of the Illinois action when several other motions had been heard in Judge Marshall's court and when Judge Marshall's hearing of December 16, 1983, had been expressly continued until the following week. Judge Marshall was there; Carlucci's counsel likewise. Only Anania failed to appear.
 
 
 50
 (3) Anania made conflicting representations to the court below as to the existence of investigative reports. While Anania denies this, it is clear from the record, and from Judge Campbell's order of March 30, 1984, that such misleading statements were made. Anania first answered that the requested reports did exist, but he objected to their production on grounds of work product, privilege, and burdensomeness.[4] He likewise told the court that the documents existed at a hearing before Judge Paine on May 18, 1982. Later Anania stated "unequivocally" that the documents did not exist. He seizes upon this later denial as evidence that the court was not misled because he then stated clearly that no reports existed. But the issue of whether reports did exist was still an open question at that time. The court's statements simply set out the conflict and did not resolve it. It was not until March 30, 1984, that the court was able to determine that the documents in question had in fact existed and had been destroyed.
 
 
 51
 In short, on the entire evidence we are not "left with the definite and firm conviction that a mistake has been committed" as required by U.S. Gypsum. In fact we are left with little doubt but that the court below could properly have reached no other conclusion. If this case is not a paradigm of the abuse that sanctions under Rule 37 are to correct, we would have great difficulty hypothesizing one that is.
 
 
 52
 C. The Requirement of Due Process.
 
 
 53
 Anania advances three claims that he was denied the right to due process of law guaranteed by the Fifth Amendment to the United States Constitution. He argues first that the court below failed to follow the relevant local rules for the Southern District of Florida, second that when imposing sanctions after settlement of the underlying controversy the court should refer possible sanctions to an independent body, and third that he did not receive notice adequate to inform him that his rights were being adjudicated and precisely what matters were to be considered in making that adjudication. We consider each in turn.
 
 
 54
 1) The Local Rules.
 
 
 55
 The United States District Court for the Southern District of Florida has promulgated rules of discipline to govern the conduct of attorneys appearing in practice before it. Such rules operate parallel to, but not inconsistent with, the Federal Rules of Civil Procedure. Fed.R.Civ.P. 83. In essence, Anania argues that he is being disciplined by the district court and accordingly has a right, under Local Rule 5, to have his alleged misconduct considered by either of the optional mechanisms set forth in that Rule.[5] Both avenues provide for 30-day notice of such proceedings and, when the complaint is initiated by a judge based on a case before him, hearing before a three judge panel, none of whom was otherwise involved with the underlying case. For Anania the trial court followed neither of these requirements.
 
 
 56
 Though Mr. Anania has every right to expect and receive notice and a fair adjudication of his case, we find that the local rules are not applicable in this case. Proper characterization of the action below, which was based on a bad faith obstruction of discovery rather than a breach of the ethical norms governing the attorney-client relationship traditionally proscribed by a professional code, makes this clear. Local Rule 5 does clearly direct the convening of a Grievance Committee or appointment of a "special prosecutor" of sorts in "processing allegations of misconduct." But we must rely upon Local Rule 4 to give meaning to Local Rule 5, for it is the former that provides a definition of the operative term "misconduct" as those acts which "violate the Code of Professional Responsibility" adopted by the Supreme Court of Florida.[6]
 
 
 57
 Because the Florida Code of Professional Responsibility is not extant in the record below, and because Anania cites no specific provisions of that Code in defense of his claim that his conduct is of the sort governed by the Code, we are forced to extrapolate from another provision of the local rules, Rule 12, providing that the rules of discipline are not properly construed as denying the courts "such powers as are necessary for the Court to maintain control over proceedings conducted before it...."[7] We hold that implicit in this reservation of power for the district court is a rejection of Anania's contention that the requirements of Local Rule 5 govern.
 
 
 58
 We note further that a decision contrary would violate the similar reservation of Federal Civil Rule 83, which rule provides that local rules may not be "inconsistent with these rules." We think it clear from the firm language of the Supreme Court in a number of cases that the power of federal courts to curb abuses of the discovery process is not to be hamstrung by the additional procedural burdens of local rules if such rules would have the effect of limiting the force and effect of Federal Rule 37. Roadway Express, 447 U.S. at 763-64, 100 S.Ct. at 2462-63; National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; Link, 370 U.S. at 632, 82 S.Ct. at 1389.
 
 
 59
 2) Sanctions After Settlement.
 
 
 60
 Anania's second due process claim is derived from the first and fails for the same reason. He argues that the policy announced by the Supreme Court in cases like Roadway Express and National Hockey League is not implicated here because those cases contemplated a strict application of Rule 37 in ongoing litigation so as to facilitate or compel compliance with discovery orders. Such concerns would be inapposite here, he argues, because the underlying action has been settled; accordingly obedience to the trial court's orders would not be furthered by disposing of the case under Rule 37.
 
 
 61
 This fails for three reasons: First, it squarely contradicts the language of the Supreme Court in National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781, where the Court made clear that sanctions for discovery violations serve "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." (emphasis supplied). We must enforce Rule 37 sanctions "diligently." Roadway Express, 447 U.S. at 763, 100 S.Ct. at 2462. If the rule is not so enforced, "it might well be that these respondents would faithfully comply with all future discovery orders ... in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates ... to flout other discovery orders of other district courts." National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781 (emphasis in original); Aztec Steel, 691 F.2d at 482. It is neither necessary nor appropriate for an inferior federal court to engraft upon Rule 37 a procedural mechanism more demanding than that which the Supreme Court has deemed adequate to both guarantee due process and vindicate the policy underlying that rule.
 
 
 62
 Second, we previously held in Guidry, 640 F.2d at 534, that the district court properly assessed a $500 fine against counsel for discovery violations after the record on the underlying case was closed and the appeal was already filed. The posture of the underlying claim was itself irrelevant to the decision of the trial court to impose sanctions. We recognize the correctness of that holding and reaffirm today the breadth of discretion we afford our district courts to deal with attorney misconduct in ways they deem best suited to each instance of nonfeasance.
 
 
 63
 Anania's argument fails on a third level. By making the status of the underlying action controlling over who may adjudicate allegations of discovery misconduct (that is, by the federal judge hearing the case or by the special three judge panel) and what standards will inform their deliberations (Federal Rule 37 or some local provision) the effect is to bind the hands of the trial court in an area where the Supreme Court has ruled we should promote maximum flexibility. It would deprive the district judge of the option to defer a ruling on sanctions so as to allow the errant attorney an opportunity to "purge" himself of the wrongdoing, or at least to mitigate his penalty, by henceforth cooperating in discovery.[8] Anania's argument would force a court to choose between imposing an appropriate sanction for each instance of bad faith discovery conduct at the time it occurred, certifying each episode to a grievance panel, or waiting until the underlying litigation has been completed and then forwarding the entire matter to the grievance committee or appointed counsel for investigation and a hearing before judges not previously involved, with the expense and delay concomitant. Were we so to hold we would be transforming most citations of misconduct during discovery into full-fledged disciplinary proceedings. This would mire trial courts in endless delays while panels were constituted to consider potential violations of Rule 37 with the attendant result, contrary to the clear holding of the Supreme Court, of discouraging trial courts from imposing sanctions in the first place. Further, it would cast into doubt the power of a district court to hold contempt proceedings during the course of litigation, since such proceedings carry penalties more severe than those imposed in discovery matters. Clearly this is not what the Supreme Court intended, nor what we would find desirable in the courts of this Circuit, nor even what Local Rule 12 apprehends.[9]
 
 
 64
 3) Right to Notice and Hearing.
 
 
 65
 Anania's third due process claim is that he was not afforded constitutionally adequate notice of the charges against him or given adequate opportunity to defend himself against these allegations. He suggests to us In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), as setting forth the constitutional requisites,[10] and argues that the district court's show cause order did not inform him of all of the discovery conduct for which he would be called upon to answer. He points to several findings in the district court's final order that he claims were not expressly mentioned in the show cause order, leaving him unprepared to contest them at the final hearing before Judges Paine and Campbell. The court below characterizes the "findings" at issue as "observations" made in response to Anania's attempt to explain his actions as having been founded in good faith.
 
 
 66
 Ruffalo is not controlling here. The distinction between discovery sanctions and formal disciplinary proceedings that forced us to reject Anania's claim under the local rules likewise compels us to reject this claim. Anania's argument ignores the fact that the relevant findings of bad faith conduct alleged against him had already been made quite some time before the order to show cause was issued. The findings were made during the course of discovery in the Orders of November 17, 1983, of December 28, 1983, and of March 30, 1984. The record reflects that in each case ample opportunity was afforded for Anania to be heard on the factual matters being considered. Briefs were filed before the order of November 17; a pretrial conference was held before the December 28 order; briefs were filed and a hearing was held before the March 30 order. The express purpose of the final hearing was only to consider the issue of sanctions. It was not to constitute a formal disciplinary proceeding to consider the charges de novo. The fair notice requirement of Ruffalo applies, of course, to each of the district court's prior inquiries from which resulted the findings of bad faith conduct. Notice necessary was given by the court incident to each of those proceedings. Anania does not contest the adequacy of the notice in the earlier proceedings but directs his argument to the final hearing held before the imposition of the $10,000 sanction.
 
 
 67
 In weighing the adequacy of notice and hearing in the final action we are guided by the holding in Link, 370 U.S. at 632, 82 S.Ct. at 1389, where the Court upheld the sanction of dismissal of an action even in the face of claims of insufficient notice and opportunity for a hearing. "[E]very order entered without notice and a preliminary adversary hearing [does not] offend due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct."[11]
 
 
 68
 We find it clear from the record that Anania was given the full measure and more of process due. Even though findings of bad faith conduct in discovery had already been made, the district court gave Anania an additional opportunity to be heard before imposing sanctions. The show cause order referenced the prior findings of bad faith conduct in the orders dated November 17, 1983 (which had reserved the issue of sanctions for a later date) and March 30, 1984 (which had announced the possibility of "more severe sanctions"). Given the protracted history of discovery in this case and the repeated findings of bad faith, we find that the show cause notice was adequate to inform Anania of the issues to be decided at the final hearing under the Link standard. No "charges" need have been specified; the sole issues to be decided were the form and measure of sanctions. Under these circumstances, there is no merit to Anania's argument that the earlier orders were inadequate.
 
 
 69
 D. The $10,000 Sanction.
 
 
 70
 Mr. Anania's final contention is that in assessing against him the $10,000 sanction the court below failed to place on the record evidence sufficient to explain how it arrived at that figure as fairly reflective of the costs entailed in Anania's gross misconduct. Therefore the fine is, he argues, arbitrary and based on unsupported assumptions. Finding the order below to be deficient in that the district court failed to detail the basis for arriving at the sum of $10,000, we agree and on this ground alone we reverse and remand.
 
 
 71
 The trial court imposed sanctions under the final clause of Federal Rule 37(b), which provides that a court may properly penalize uncooperative attorneys or parties litigant in discovery proceedings by requiring the payment of "reasonable expenses, including attorney's fees, caused by the failure...." The standard of review in cases of this sort is abuse of discretion. The magnitude of sanctions awarded is bounded under Rule 37 only by that which is "reasonable" in light of the circumstances.[12] Permissible purposes of sanction include: 1) compensating the court and other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney. Roadway Express, 447 U.S. at 764, 100 S.Ct. at 2463; National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; Aztec Steel, 691 F.2d at 482.
 
 
 72
 On appeal, however, we cannot realistically hold against this standard the determination of the court below unless there is offered on the record both a justification for the sanction and an accounting by the court, and by the party adverse to the nonfeasant lawyer, of the "reasonable expenses, including attorney's fees, caused by the failure...." Accordingly, in cases invoking the sanction power of Rule 37 the district court must "clearly state its reasons so that meaningful review may be had on appeal." Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 505 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). When pressed for such evidence and specific findings on the record below, counsel for the appellees conceded at oral argument that "There was none." In the instant case the court offered four general justifications for its order: 1) the nature of the misconduct; 2) the fact that Anania's conduct was burdensome on the court; 3) the deterrence factor underlying Rule 37; and 4) the fee that Anania earned through the improper conduct. That said, the court ordered Anania to pay $10,000 to the registry of the district court without recourse to his client. But the court below failed to set forth an accounting adequate to justify the figure it adopted.
 
 
 73
 We note from the record that the misconduct of Anania, inter alia, forced the appointment of a special master, obviously entailing fees and costs, caused discovery disputes resulting in several fruitless plane trips by Carlucci's attorney and staff, and necessitated numerous hearings and orders from four federal district court judges. While Anania argues that the fine imposed was "grossly excessive," taken together Anania's handiwork may well have amounted to $10,000. The court on remand, upon a full accounting may, in its discretion, determine that a sanction greater than $10,000 is warranted. It may also find that the fine is better deemed costs to be paid in full or part to Carlucci and/or her attorney to compensate them for their expenses. We simply are in no position to resolve that question on appeal. Rather, we must reverse and remand on this issue so that the district court may create a record accounting for costs adequate to sustain whatever sanction that court ultimately decides is justified in light of the repeated refusal of Anania to abide by that court's discovery directives.
 
 
 74
 AFFIRMED in part and REVERSED in part and REMANDED.
 
 FAY, Circuit Judge, concurring:
 
 75
 Though agreeing completely with Judge Johnson's opinion for the court, I feel compelled to add these few words.
 
 
 76
 Some years ago a very wise and experienced trial judge said, "Professional courtesy is the lubricant that allows the wheels of justice to turn smoothly."[1] The courts of this nation cannot function without the full support of all members of the bar. Attorneys are officers of the court. It is their primary responsibility to see that our system of jurisprudence works.
 
 
 77
 Unfortunately, in my opinion, the last twenty five years have seen a great rise in the number of individuals admitted to the practice of law and a great decline in professional standards. Sheer numbers makes it impossible for judges to "teach" young lawyers how to practice law. Such instruction must come from a combination of all segments of the legal profession.
 
 
 78
 Appellant is a member of one of our nation's most respected law firms. Clearly, he should have known his conduct was totally abhorrent to the standards of our profession. No client--large or small, rich or poor, with or without influence--can be allowed to corrupt our system of jurisprudence to protect his, her or its self interests.
 
 
 79
 It is my personal observation that too many practitioners have "sold out to the client." While the actual numbers of those who have done so may not be great, the trend can be disastrous! Advocacy must be carried out within the rules. The English differentiate between "solicitors" and "barristers." Barristers receive special training and present the cases in court. Their traditional values, quality of scholarship and loyalty to the courts is known world-wide. In this country we have developed many certification procedures for specialists in certain areas of the law. The federal courts are implementing new procedures for the admittance of practitioners in an effort to improve the quality of advocacy. What we must never forget is that we all serve as "officers of the court." Failing in this endeavor, we will lose much more than merely the case at hand.
 
 
 
 *
 Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Judge Campbell, designated to sit in the Southern District of Florida, was acting on behalf of Judge Paine in the latter's absence. Subsequently Judge Campbell was designated by Judge Paine to hear all matters related to this controversy pending and future
 
 
 [2]
 Rule 30(d) provides, in relevant part:
 At any time during the taking of a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court ... may order the officer conducting the examination to cease forthwith from taking the examination.... Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order. The provisions of Rule 34(a) [losing party in motion to compel discovery must pay prevailing party's attorneys' fees and expenses connected with motion] apply to the award of expenses incurred in relation to the motion.
 
 
 [3]
 "In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."
 
 
 [4]
 Anania correctly argues that an objection to production may be based on the ground of excessive burden without the defendant first having to undertake an exhaustive search for the requested documents. But here the district court did not find bad faith conduct because an exhaustive search had not been undertaken. Rather, the finding was based on the failure of Anania to undertake any reasonable search at all before filing the objection
 
 
 [5]
 Local Rule 5 provides, in relevant part:
 A. The court will utilize its Grievance Committee as established and accordingly act upon the reports and recommendations of that committee provided that this rule shall, in the discretion of the Court, constitute an alternate method of processing allegations of misconduct.
 B. When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the Judge shall refer the matter to counsel or investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate.
 
 
 [6]
 Rule 4 B provides that:
 Acts or omissions by an attorney admitted to practice before this Court, ... which violate the Code of Professional Responsibility adopted by this Court shall constitute misconduct and shall be grounds for discipline.... The Code of Professional Responsibility adopted by this court is the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits....
 
 
 [7]
 Local Rule 12 reads in full:
 Nothing contained in these Rules shall be construed to deny to this Court such powers as are necessary for the Court to maintain control over proceedings conducted before it, such as proceedings for contempt under Title 18 of the United States Code or under Rule 42 of the Federal Rules of Criminal Procedure.
 
 
 [8]
 Indeed, such an opportunity was afforded here; it was only on Carlucci's third motion to strike in the face of recalcitrance by Piper and by Anania that the district court finally had enough and entered the order to show cause
 
 
 [9]
 The only case with which we are familiar that might be taken to support Anania's position is United States v. Vague, 697 F.2d 805 (7th Cir.1983). That case involved the refusal of an attorney to lower his apparently exorbitant fee upon order of the trial court during sentencing proceedings. The court and the attorney sparred for several weeks over the fee, with the court ultimately holding the attorney in contempt. The Seventh Circuit reversed, reasoning that the combination of prosecutorial and adjudicative functions in the trial judge violated the due process guarantee of an impartial tribunal. Rather, that court held, the matter should have been referred to an independent prosecutor under local rules
 We find Vague distinguishable because it involved a disciplinary inquiry entirely separate in subject matter from the underlying action. The exorbitant fee question and the facts material to that issue were altogether different from those involved in the sentencing decision. Sending the matter to the local committee involved no overlap of judicial resources. By contrast, here the resolution of the numerous discovery disputes and the decision to impose sanctions on the appellant, even after the underlying action had been settled, were inextricably intertwined. Further, the Vague case involved contempt sanctions, which have historically required greater due process protection since they often carry criminal, as opposed to civil penalties. Even if the case could not be distinguished, we find it unpersuasive because it has policy implications that we think are ill-advised and is contrary to binding precedent.
 
 
 [10]
 In re Ruffalo involved a disciplinary action against an attorney accused of soliciting clients. The original charge enumerated twelve distinct counts of barratry. At a hearing, however, a thirteenth count was added after the attorney-defendant had presented his defense. The state board sanctioned the attorney on the thirteenth count. The Supreme Court reversed, holding that the "charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused." 390 U.S. at 551, 88 S.Ct. at 1226
 
 
 [11]
 Likewise, in Guidry we upheld sanctions under Rule 37 where the attorney caused unnecessary discovery expense even while "no technical violation of any particular rule was made by Guidry's counsel" because the "imposition of sanctions in this case was in keeping with the spirit of the rules." 640 F.2d at 534. If sanctions may be imposed even absent a technical violation, then clearly in a case such as this, where counsel's misconduct was recognized by the court on three separate occasions, there can be no question but that the due process requirement of adequate notice was met. See also, Margoles v. Johns, 587 F.2d 885, 888-89 (7th Cir.1978) (district court refused to grant evidentiary hearing regarding sanctions for failure to follow court discovery directives; noting the "voluminous factual detail" provided to the district court, the court of appeals held that a full hearing with oral argument was "not required" because it "would have been cumulative"); Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir.1977) (trial court should "enter an order to show cause and hold a hearing, if deemed necessary, to determine whether assessment of costs and attorney fees or even an attorney's citation for contempt would be ... just and effective sanction.")
 
 
 [12]
 We expressly decline Anania's invitation to permit consideration of the personal situation of one subject to penalty in determining the appropriate sanction. We find no evidence in the Federal Rules, in the relevant statutory enactments, or in the case law to suggest that it would in any way be appropriate for a court to consider such circumstances. The sole concern is with the facilitation of discovery and the deterrence of abuse of that process. We also note that perhaps if Mr. Anania had considered both his family and financial obligations, and his obligations as an officer of the court, he might not be in the situation in which he presently finds himself
 
 
 [1]
 Circuit Judge Grady Crawford, Circuit Court in and for the Eleventh Judicial Circuit of Florida, Dade County, Florida