ELECTRONIC DATA SYSTEMS CORP., et al., Relators,

v.

Candace G. TYSON, Judge Presiding, 44th District Court of Dallas County, Texas, Respondent.

No. 05–92–01719–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1993.

Thomas Gibbs Gee, Rod Phelan, Sarah R. Saldan, Dallas, for appellant.

W.D. Masterson, Melissa A. Johnson, Dallas, for appellee.

Before BAKER,[1] BURNETT and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

Relators Electronic Data Systems Corporation (EDS) and Robert C. Bender seek writ of mandamus compelling the Honorable Candace G. Tyson, Judge of the 44th District Court of Dallas County, Texas, to vacate her order imposing "death penalty" sanctions for discovery abuse. We conditionally grant the writ in part and deny it in part.

## FACTUAL AND PROCEDURAL HISTORY

Bender was David M. Dale's supervisor at EDS. EDS terminated Dale's employment. Dale sued both EDS and Bender for negligent infliction of emotional distress because of the termination. John O. Sheller, one of

EDS's in-house attorneys, conducted the defense for both EDS and Bender.

During discovery, Sheller had subpoenas issued under rules 176, 177, and 177a of the Texas Rules of Civil Procedure. Rule 177 states that a subpoena "may be made returnable forthwith, or on any date for which trial of the cause may be set." Tex.R.Civ.P. 177.[2] Sheller interpreted this clause to mean that he could issue the subpoena returnable on the date of a trial setting or on any date before the trial setting. He realized he would have to serve a notice of deposition with a subpoena duces tecum on his adversary. However, he concluded that he could use a trial subpoena without giving notice to his adversary.

For example, Sheller wanted Dale's medical records. He subpoenaed Dr. Mary Troutman, Dale's doctor, directing her to appear before the court on October 21, 1991, and to remain there from day to day until discharged by the court. The subpoena ordered her to bring Dale's medical records. When Sheller issued the subpoena, there was no trial setting for October 21; the setting was for February 3, 1992. Sheller wrote a cover letter to Dr. Troutman. The letter stated that if she chose not to appear to give testimony, she could simply provide him Dale's medical records by October 21.

Sheller consulted with another EDS associate to confirm that his reading of rule 177 was a legitimate interpretation. The associate read the rule and agreed with Sheller's interpretation. That this use of a trial subpoena[3] required an intentional and deliberate misrepresentation of the actual trial setting does not appear to have occurred to them; they saw their use of trial subpoenas in this manner merely as "unconventional."

1. The Hon. Jeff Kaplan was originally on the panel when this case was submitted. The Hon. James A. Baker substituted for him after Justice Kaplan left the Court. Justice Baker has reviewed the record and the briefs.

2. All future references to the rules are to the Texas Rules of Civil Procedure unless otherwise stated.

3. EDS argues before this Court that rules 176, 177, and 177a do not expressly limit themselves to "trial subpoenas," as opposed to discovery

subpoenas. It also argues that the form of the subpoena itself that actually issued does not specify that it is a "trial subpoena." These arguments completely ignore the plain wording of the subpoena, which directs the witness to appear in court at a date and time certain and there to remain from day to day until discharged by the court. No one reading this subpoena would conclude that it was intended to compel attendance at a mere deposition, rather than at an actual trial before a court.

Despite the service requirements of rule 178, Sheller simply mailed the subpoena with the cover letter. He gave Dale no notice of what he was doing. He then sent an EDS paralegal to Dr. Troutman's office. Dr. Troutman surrendered Dale's medical records to the paralegal.

After EDS discharged him, Dale consulted with Thompson, Coe, Cousins & Irons about representing him against EDS. The firm declined to represent him. It wrote Dale a letter to that effect. Dale voluntarily produced the letter to EDS during discovery. As a result, Sheller sent one of his subpoenas to Thompson, Coe. That subpoena gave the date on which representatives of Thompson, Coe were to appear as November 1, 1991. Sheller's cover letter once again suggested that Thompson, Coe need not send a representative to testify if it voluntarily surrendered any documents about Dale before that date. Sheller's letter also assured Thompson, Coe that it need not concern itself about keeping its Dale file confidential:

> I realize that under normal circumstances your records would be protected by the attorney client privilege, but Mr. Dale has produced voluntarily in this case otherwise privileged correspondence between your office and Mr. Dale, thereby waiving the privilege. A copy of this correspondence is enclosed for your reference. I am, therefore, requesting any and all documents relating to David M. Dale which are in your possession, custody or control.

During this time, Dale continued to seek employment elsewhere. Sheller sent similar subpoenas to every prospective employer he knew of. The record shows that Sheller sent subpoenas to at least fourteen prospective employers. During oral argument, Dale said that the actual number was twenty-three. All but one responded in some form, many by producing Dale's resume and a form rejection letter, and some by replying that their personnel records contained no reference to Dale.

One prospective employer was Arthur Andersen & Company. Its Chicago in-house counsel returned a copy of Dale's resume and a rejection letter with a cover letter. This letter concluded:

> We trust that you will provide a copy of the enclosed to opposing counsel. Further, we understand that by providing you with the enclosed that we have fully complied with this subpoena and there is nothing further we need do in this regard.

Arthur Andersen & Company did not know who represented Dale in Texas. However, it learned Dale's home address from his resume. It copied the cover letter to Dale at his home address. Meanwhile, Thompson, Coe telephoned Dale's attorney to inform him that it would not voluntarily produce Dale's records. Dr. Troutman reported to Dale's attorney that she had surrendered Dale's medical records.

An angry exchange of letters followed. Dale's attorney wrote Sheller that Sheller's conduct was "highly unethical." Sheller replied with a faxed letter. Sheller stated that:

> [I]f any subpoenas were served improperly, which I adamantly deny, it would be the subpoenaed witnesses' province, and not yours, to raise any objection with the Court. None have done so.

The letter concluded that Sheller would excuse Dale's attorney's "scurrilous accusation of unethical conduct on this one occasion," but he would not do so again.

Dale moved to quash all the subpoenas. His motion pointed out that Sheller's action was arguably criminal.[4] Thompson, Coe had concern about its responsibility to protect the confidentiality of its Dale files. Because of Sheller's letter to Dale's attorney stating that only the subpoenaed witness could object to improper service, Thompson, Coe expected EDS and Bender would argue that Thompson, Coe had standing, but not Dale himself, to attack any impropriety of the subpoena

---

4. A person who "knowingly makes a false entry in . . . a governmental record," "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record," or "makes, presents, or uses a governmental record or a blank governmental record form with intent that it be used unlawfully" commits an offense. In 1991, the offense was a Class A misdemeanor or a third degree felony, depending on the circumstances. *See* TEX.PENAL CODE ANN. § 37.10 (Vernon 1989).

directed to it. Thompson, Coe filed its own motion to quash.

On October 30, 1991, the trial court conducted a hearing on the motions to quash. Sheller was ready to testify that he believed in all good faith that the rules did not prohibit his conduct. He also brought along the EDS associate whom he had consulted. Before he began the substance of his testimony, Judge Tyson asked him if he wanted to consult with a criminal defense attorney to preserve any Fifth Amendment rights that he might have. The discussion became animated. Nonetheless, the hearing ended inconclusively. Judge Tyson invited the parties to submit additional authorities for their respective positions within a week or so.

On November 11, Dale filed his second amended petition. The petition reasserted his claim for negligent infliction of emotional distress related to his discharge from EDS. Additionally, it asserted new claims for intentional infliction of emotional distress, abuse of process, negligent and intentional invasion of privacy, and interference with prospective contracts. Dale asserted these claims based on his argument that Sheller's use of the subpoenas abused the discovery process. The claim for interference with prospective contracts arose, according to Dale, because Sheller mailed the subpoenas to Dale's prospective employers.

On November 20, Sheller filed an affidavit. He did not attach it to any pleading. In the affidavit Sheller swore that his interpretation of the Texas Rules of Civil Procedure was one that he had come to in good faith. He stated that EDS management and Bender had no knowledge that he had mailed any subpoenas. He also swore that he would never cause similar subpoenas to issue again.

In April 1992, Judge Tyson signed an order imposing sanctions on EDS and Bender. The order struck relators' pleadings, prohibited relators from introducing any evidence about Dale's damages, and required relators to pay Dale $13,900 in attorney's fees. EDS and Bender filed a motion to reconsider with supplemental material. Dale filed a response. In July, Judge Tyson signed an order denying EDS and Bender's motion to

reconsider. This mandamus proceeding followed.

Relators contend that Judge Tyson abused her discretion: (1) by sanctioning relators for acts for which, at most, Sheller was culpable; and (2) by striking the relators' answer to Dale's second amended petition. Relators argue that Dale predicates the new causes of action he asserts in that petition upon the same facts (discovery abuse) giving rise to Dale's motion for sanctions. Relators further ask us to order or suggest the transfer of the case from Judge Tyson's court to another court. Dale responds that Judge Tyson committed no abuse of discretion.

## DISCOVERY SANCTIONS

### A. Standard of Review

A trial court may impose sanctions on any party who abuses the discovery process. TEX.R.CIV.P. 215; *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986) (per curiam). The trial court's imposition of discovery sanctions is within that court's discretion. We set aside that decision only upon a showing of a clear abuse of discretion. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex.1992) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding).

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present a proper case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *City of Dallas v. Cox*, 793 S.W.2d 701, 706 (Tex.App.—Dallas 1990, no writ). Stated otherwise, we determine whether the trial court's act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 222 (Tex.App.—Dallas 1989, writ denied).

In determining discovery sanctions, a trial court may consider the entire record and all the offending parties' conduct during

the litigation. *Larson v. H.E. Butt Grocery Co.*, 769 S.W.2d 694, 696–97 (Tex.App.—Corpus Christi 1989, writ denied). Because a trial court decided a matter within its discretionary authority in a way different from that in which an appellate court might rule under similar circumstances does not show that the trial court abused its discretion. *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Tate*, 767 S.W.2d at 222.

To support a reversal of the trial court's actions, the trial court's imposition of the requested sanctions must amount to such a denial of an appellant's rights as was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *See* TEX.R.APP.P. 81(b)(1); *Bruner v. Exxon Co., U.S.A.*, 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied). To determine the trial court's guiding rules and principles in imposing sanctions for discovery abuse, we look to the rules as well as the decisions of appellate courts of this State and of the United States. *Downer*, 701 S.W.2d at 242.

## B. Applicable Law

### 1. Mandamus

■ Mandamus issues only to correct a clear abuse of discretion for the violation of a duty the law imposes when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). A normal appeal is a clear and adequate remedy at law. *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984) (orig. proceeding). The person seeking mandamus relief must show the lack of an adequate appellate remedy. *Walker*, 827 S.W.2d at 840; *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989) (orig. proceeding).

■ An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. *Walker*, 827 S.W.2d at 842. The relator must show the effective denial of a reasonable opportunity to develop the merits of his or her case. *Walker*, 827 S.W.2d at 843.

### 2. Monetary Sanctions

■ The trial court should not use monetary sanctions to dispose of litigation. Our supreme court has recognized that a sanction assessed and payable before an appeal could, in some circumstances, have a preclusive effect on the violating party's access to the courts. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991) (orig. proceeding); *see also Thomas v. Capital Security Serv., Inc.*, 836 F.2d 866, 882 (5th Cir.1988). The imposition of monetary sanctions must not result in total or even significant preclusion of access to the court. *Braden*, 811 S.W.2d at 929; *Thomas*, 836 F.2d at 882–83 n. 23. If the trial court's imposition of monetary sanctions threatens a party's continuation of the litigation, appeal affords an adequate remedy only if the court defers payment of the sanction until the court renders final judgment. *See Braden*, 811 S.W.2d at 929; *Susman Godfrey, L.L.P. v. Marshall*, 832 S.W.2d 105, 108 (Tex.App.—Dallas 1992, orig. proceeding). Such an order affords the sanctioned party an opportunity to supersede the judgment and perfect his appeal. *Braden*, 811 S.W.2d at 929; *Susman Godfrey*, 832 S.W.2d at 108.

■ However, a litigant must contend to the district court that a monetary sanction will preclude his or her access to the court. *See Braden*, 811 S.W.2d at 929; *Susman Godfrey*, 832 S.W.2d at 108. If a party makes this contention to the district court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make express written findings after a prompt hearing about why the sanction does not have preclusive effect. *Braden*, 811 S.W.2d at 929.

### 3. Death Penalty Sanctions

Rule 215 provides the trial court with discretion to enter sanction orders if the court finds a party is abusing the discovery process in seeking discovery. *See* rule 215(3). The trial court may enter such orders as are just, including striking the offending parties' pleadings, refusing to allow the offending party to support or oppose designated claims

or defenses, prohibiting him from introducing designated matters into evidence, or charging all or any portion of the discovery expenses or taxable court costs against the offending party or the attorney advising him. *See* rule 215(2)(b)(2), (4), (5).

If the court finds a party is abusing the discovery process in seeking discovery, the trial court may, after notice and hearing, impose any appropriate sanction authorized by subdivision (2)(b) of the rule. A trial court's sanction order is subject to appellate review. *Westfall Family Farms, Inc. v. King Ranch, Inc.*, 852 S.W.2d 587, 590 (Tex. App.—Dallas 1993, writ denied).

■ A trial court abuses its discretion if the sanction it imposes does not further one of the discovery sanctions' purposes. The purposes of discovery sanctions are to: (1) secure the parties' compliance with discovery rules; (2) deter other litigants from violating the discovery rules; and (3) punish parties who violate the discovery rules. *Bodnow Corp.*, 721 S.W.2d at 840; *Westfall Family Farms*, 852 S.W.2d at 590. Rule 215 authorizes sanctions that prevent or inhibit a party's presentation of the merits of its claims. These sanctions include excluding essential evidence, striking pleadings, dismissal, and default. *See* rule 215(2)(b)(3), (4), (5).

■ The effect of death penalty sanctions is to adjudicate claims or defenses—not on their merits—but on how a party or his attorney conducts discovery. *Braden*, 811 S.W.2d at 929. A trial court should impose case determinative sanctions in the first instance only in exceptional cases when circumstances clearly justify them and it is fully apparent that no lesser sanctions would promote compliance with the rules. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993). The trial court must reserve death penalty sanctions for circumstances in which a party has so abused the procedural rules that, despite imposition of lesser sanctions, the court can presume the party's position lacks merit and it would be unjust to permit the party to present the substance of that position to the court. *See Braden*, 811 S.W.2d at 929; *see also TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991) (orig. proceeding).

■ The choice of sanctions is a matter for the trial court's sound discretion. However, discovery sanctions must be just under the circumstances. *See TransAmerican*, 811 S.W.2d at 917. Circumstances of the case include the reasons offered and proved by the offending party or established as a matter of law on the record. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

■ Two factors mark the bounds of the trial court's discretion for sanctions to be just:

1. A direct relationship must exist between the offensive conduct and the sanction imposed.

   a. The court must direct the sanction against the abuse and toward remedying the prejudice caused the innocent party.

   b. The Court should impose the sanction upon the offender. The court must at least try to determine whether the offensive conduct is attributable to counsel only, or the party only, or to both.

2. Just sanctions must not be excessive.

   a. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes.

   b. A court must consider less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse.

*GTE Communications Sys. Corp.*, 856 S.W.2d at 730; *TransAmerican*, 811 S.W.2d at 917.

■ Although punishment, deterrence, and securing compliance with discovery rules are valid reasons to impose sanctions, these considerations alone cannot justify a trial by sanction. We cannot justify severe sanctions that prevent a decision on the merits of the case absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities for discovery under the rules. *Chrysler Corp.*, 841 S.W.2d at 849; *TransAmerican*, 811 S.W.2d at 918. Even then, the trial court must first test lesser sanctions to determine whether they

are effective to secure compliance, deterrence, and punishment of the offender. *Chrysler Corp.*, 841 S.W.2d at 849; *TransAmerican*, 811 S.W.2d at 918; *Westfall Family Farms*, 852 S.W.2d at 591.

## APPLICATION OF LAW TO FACTS

### A. Imposition of Attorneys' Fees

■ Part of the trial court's sanctions order awarded Dale $13,900 in attorneys' fees. If the trial court imposes monetary sanctions, they are reviewable on appeal from the final judgment. Rule 215(3); *Susman Godfrey*, 832 S.W.2d at 108. However, monetary sanctions are subject to review by mandamus if the party against whom the trial court imposes the sanctions shows that the sanctions would affect its ability to appeal the sanctions order after final judgment. *See Susman Godfrey*, 832 S.W.2d at 109.

■ Relators did not contend before the trial court, nor do they contend before this Court, that the monetary sanction the trial court imposed will affect their ability to appeal the sanctions order after final judgment. Neither did they contend before the trial court, nor do they contend before this Court, that they are unable to pay the sanction. We conclude relators have an adequate remedy by appeal. *Walker*, 827 S.W.2d at 843; *Braden*, 811 S.W.2d at 929. We deny relator's petition for writ of mandamus to the extent that it asks us to compel respondent to vacate her award of attorneys' fees.

### B. Death Penalty Sanctions

The trial court's sanction order also struck relators' pleadings and prohibited them from introducing any evidence about Dale's damages.

■ Relators argue they are not susceptible to sanctions because Sheller's actions facilitated discovery rather than obstructing it. While we agree with relators that any

abuse of the discovery process that the relators committed was an offensive, not defensive, abuse, we disagree with their conclusion.

In our view, offensive discovery abuse is merely a subcategory of abuse of discovery process generally. The trial court has the discretion to sanction a party if the court finds a party is abusing the discovery process in *seeking* discovery. *See* rule 215(3). We hold that the sanctions rule 215 provides are available to a trial court, in its discretion, to sanction offensive discovery abuse.

### 1. The Extent of the Relators' Personal Responsibility

When imposing sanctions, the trial court should impose the sanctions against the offender. The court must at least try to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *TransAmerican*, 811 S.W.2d at 917; *Westfall Family Farms*, 852 S.W.2d at 591.

As the Supreme Court held in *TransAmerican:*

> This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation.

*TransAmerican*, 811 S.W.2d at 917.

### a. Bender

■ The record shows that Dale presented no evidence at the sanctions hearing on whether Bender personally was aware of Sheller's conduct.[5] Yet there is no dispute

---

5. As mentioned earlier, after the hearing Sheller filed an affidavit stating that neither EDS nor Bender knew about the subpoenas. This affidavit was not filed with or attached to a pleading. The record shows it was not introduced into evidence in the course of a hearing. We cannot consider the affidavit as evidence. *See Estate of*

*Nelson v. Neal*, 764 S.W.2d 322, 325 (Tex.App.—Texarkana 1988), *aff'd sub nom. Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex.1990). Relators assert that Judge Tyson promised them a hearing on their motion to reconsider but that she changed her mind and signed an order denying the motion to reconsider without conducting a hearing.

that Sheller represented Bender in the litigation simply because Bender was an EDS employee. Therefore, the same attorney chosen to represent EDS could adequately protect Bender's interests. Thus, there is no evidence implicating Bender in the issuance of the subpoenas apart from entrusting Sheller to represent him in the case. We conclude Judge Tyson abused her discretion in striking Bender's pleadings and prohibiting him from introducing evidence about Dale's damages. *TransAmerican,* 811 S.W.2d at 917.

### b. EDS

■ However, the EDS–Sheller relationship was different. Sheller was not only the attorney representing EDS in the litigation; he was also and is an EDS employee. Sheller testified he consulted with another lawyer in the EDS legal department about Sheller's interpretation of the rules when he issued the subpoenas. Also, Sheller used an EDS paralegal in connection with the subpoenas.

■ A corporation can act only through its agents. *See State Farm Fire and Casualty Co. .v. Gross,* 818 S.W.2d 908, 912–13 (Tex.App.—Austin 1991, no writ). In litigation, only a licensed attorney can appear and represent a corporation. *Dell Dev. Corp. v. Best Indus. Uniform Supply Co.,* 743 S.W.2d 302, 303 (Tex.App.—Houston [14th Dist.] 1987, writ denied). Consequently, in litigation only an attorney can be the corporation's agent. Therefore, Sheller acted as EDS's agent in issuing the subpoenas, and EDS cannot now disclaim his actions.

■ EDS argues that the same standards apply in imposing discovery sanctions against a corporation whether its counsel is in-house or outside counsel. EDS quotes *TransAmerican:*

> On March 7, 1987, Toma [TransAmerican's adversary] noticed the deposition of Trans-

American's president, K. Craig Shephard, to take place March 16. Two days later TransAmerican's counsel, *who at that time was one of the attorneys in its legal department,* telephoned Toma's counsel to inform him that Shephard could not be available on March 16 because of a previously scheduled deposition in another case.

*TransAmerican,* 811 S.W.2d at 915 (emphasis added). The italicized clause does not support EDS's conclusion. That clause states simply that one of the attorneys in TransAmerican's legal department telephoned opposing counsel to advise him there was a *scheduling conflict with a notice to deposition.* The *TransAmerican* opinion does not state that TransAmerican did not also use outside counsel, and the remark that the attorney who called opposing counsel was "at that time" one of the attorneys in its legal department is inexplicable if we are to understand that TransAmerican used exclusively in-house counsel throughout the litigation. *TransAmerican* concludes:

> In the present case it is not clear whether TransAmerican or its counsel or both should be faulted for Shephard's failure to attend his deposition.

*TransAmerican,* 811 S.W.2d at 918. We conclude that the supreme court did not intend that the trial court can never sanction a corporation for an in-house attorney's conduct unless a nonattorney officer knows of and approves that conduct. A lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or *should be* aware of counsel's conduct and the violation of discovery rules. *TransAmerican,* 811 S.W.2d at 917 (emphasis added).

Dale argues that in any case EDS "ratified" Sheller's conduct by defending it since it first came to light. EDS hired outside counsel to defend it at the sanction hearing. EDS continues to argue that Sheller's use of

---

Although the order cites that she did not conduct a hearing before denying the motion to reconsider, nothing in the record supports the claim that she had promised to conduct one. In any case, failure to conduct a hearing on the motion to reconsider is not an abuse of discretion justifying mandamus. In discovery disputes, multiple hearings are not available to a party so the party

can marshall his defenses consecutively and present them to the court for ruling, one by one. Once a party has had the opportunity to present his defenses, a trial court need not protract the dispute by extending further opportunities. *Cf. J.K. and Susie L. Wadley Research and Institute Blood Bank v. Whittington,* 843 S.W.2d 77, 86–7 n. 9 (Tex.App.—Dallas 1992) (orig. proceeding).

subpoenas giving a misleading and nonexistent trial setting was merely an unconventional use of trial subpoenas by an ingenious and zealous lawyer. We should not be understood as saying that EDS should forego any defenses against Dale's sanctions motion that it might have. However, ratification is not an apt characterization of EDS's undertaking to defend itself against that motion.

> Nonetheless, as one commentator noted: Determination of a motion for sanctions often requires analysis of the respective rules or culpability of the attorney and client in the conduct leading to sanctions.... The required culpability determination may create a conflict of interest between attorney and client.... A potential conflict is inherent in a sanctions motion that is directed against both a client and lawyer when ... the two agree that an action was fully warranted in fact and law....

Herring, *Legal Malpractice and Ethical Considerations for Appellate Lawyers,* in ADVANCED CIVIL APPELLATE PRACTICE COURSE, J–13 (1992) (citations omitted).

Here, both EDS and Sheller agree that Sheller's action in sending out subpoenas misrepresenting a trial setting was "fully warranted in fact and law." Sheller himself is not a party to this proceeding. However, neither has EDS repudiated his action. EDS continues throughout this mandamus proceeding to defend Sheller's interpretation of the rules as perhaps overzealous, perhaps unconventional, but certainly not fraudulent.

In a reply to Dale's response to relators' petition for writ of mandamus, EDS requests this Court to issue a public opinion for the benefit of the bench and bar, holding there was nothing fraudulent about the subpoenas and that Sheller simply discovered an ingenious interpretation of the rules to permit him to do what he did. We perceive nothing at this point that obligates EDS to assert such a defense on a nonparty's behalf.

Evidence that EDS's management knew nothing of what Sheller was doing was presented by EDS after the original hearing on sanctions. Even then, when EDS did find out, it chose to stand by Sheller and aggressively defend his actions as completely ethical. EDS stresses that Sheller promised never to send out similar subpoenas again; but at the same time it asks this Court to exonerate Sheller with a published opinion.

It may be there is a conflict of interest now between EDS and Sheller. However, EDS persists in arguing Sheller's defense despite any conflict. No matter how reprehensible an attorney's conduct might be, EDS's position would lead to the result that the court never sanction the client unless the client affirmatively acknowledged knowing about that conduct when the conduct occurred.

This result would be that an attorney could effectively shield his client from sanctions for offensive discovery abuse by not telling the client how he was pursuing discovery. This is, in effect, by keeping the client in the dark about his own actions. When an attorney responds to his adversary's discovery requests, the attorney must inform the client of those requests because the client must prepare responses, prepare witnesses for deposition, and the like.

When, however, an attorney seeks to obtain discovery from his adversary, there is no information that the attorney must pass on to the client. If the attorney's tactics in obtaining discovery are successful, he simply presents the discovered material to the client. If the tactics do not work, the attorney is free to try other means to obtain desired discovery. We hold that Judge Tyson did not abuse her discretion by concluding she could properly impose appropriate sanctions directly upon EDS.

### C. Abuse of Discretion

■ Neither the trial court's order nor the statement of facts reflect that the court held an evidentiary hearing. The court bases its sanctions order only on the applicable motions, the relators' responses to Dale's motions, and oral argument of counsel.

The sanction order states that after due consideration of the availability of less stringent sanctions, the court finds that lesser sanctions would not be effective in this case. However, the court did not explain why, and the record does not indicate why, lesser sanc-

tions would have been ineffective. We give no deference to such unsupported conclusions. *See Chrysler Corp.*, 841 S.W.2d at 853. As the Supreme Court held in *Chrysler Corp.*, we fail to see why any number of lesser sanctions would not have promoted compliance with discovery. *See Chrysler Corp.*, 841 S.W.2d at 853.

■ The trial court's sanction order also recites that the court finds relators have acted in flagrant bad faith and that their counsel has exhibited a callous disregard for the responsibilities of discovery under the rules. Again, the court does not explain how it reached this conclusion. The court did not hear evidence before rendering its decision. We believe, as rule 13 requires, that in a rule 215 case the trial court should hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person allegedly abusing the discovery process. Without hearing evidence on the circumstances surrounding the credibility and motives of the actor, the trial court has no evidence to determine that a party or its attorney took action in bad faith. *Cf.* Tex.R.Civ.P. 13; *Homeowners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 888–89 (Tex.App.—Corpus Christi 1991, no writ); *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.—Dallas, 1993, no writ) (not yet published).

The trial court must first test lesser sanctions to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender. *Chrysler Corp.*, 841 S.W.2d at 849; *Westfall Family Farms*, 852 S.W.2d at 591. In sum, the record reflects the trial court imposed sanctions that prevented relators from presenting any defense in the case based solely upon Dale's first motion for sanctions. We conclude the trial court's actions do not meet the *Trans-American* criteria. *See TransAmerican*, 811 S.W.2d at 918. We hold the trial court abused its discretion in entering the sanction order that struck EDS's pleadings and prohibited it from introducing any evidence about Dale's damages in this cause.

■ We hold the order amounts to a denial of EDS and Bender's rights and caused the rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *Bruner*, 752 S.W.2d at 682.

## CONCLUSIONS

We deny relators' petition for writ of mandamus to the extent it asked this Court to compel respondent to vacate her award of attorneys' fees. We grant relators' petition for mandamus to the extent that they ask this Court to set aside the order striking their pleadings and prohibiting them from introducing any evidence about Dale's damages. We direct the trial court to vacate its orders of April 17, 1992, and July 15, 1992, insofar as they order relators' pleadings stricken and prohibit them from introducing any evidence about Dale's claims for damages. We assume the trial court will promptly comply. The writ of mandamus will issue only if it does not.

## ORDER

The Court **GRANTS** in part and **DENIES** in part the July 23, 1992 petition for writ of mandamus of relators Electronic Data Systems Corporation and Robert C. Bender as follows:

The Court conditionally **GRANTS** relators' petition for writ of mandamus with respect to the order striking relators' pleadings. The Court **ORDERS** the Honorable Candace G. Tyson, Judge presiding, 44th District Court of Dallas County, Texas, to vacate her orders of April 17, 1992, and July 15, 1992, to the extent that they strike relators' pleadings in cause no. 91–8616, styled *Dale v. Electronic Data Systems Corporation, et al.*, and prohibit them from introducing evidence concerning the damages of plaintiff David M. Dale.

The Court **DENIES** relators' petition for writ of mandamus with respect to the award of $13,900 in attorneys' fees.

The Court **DENIES** relators' request to order or suggest a transfer of the underlying litigation without prejudice to filing a motion to recuse in the trial court.

The Court **GRANTS** the September 3, 1992 motion of real party in interest David

M. Dale for leave to file post-submission brief. The Court **ORDERS** Dale's post-submission brief tendered to this Court on September 3, 1992, filed as of that date.

The Court **GRANTS** relators' September 4, 1992 conditional motion for leave to respond to Dale's post-submission brief. The Court **ORDERS** relators' response to Dale's post-submission brief tendered to this Court on September 4, 1992, filed as of that date.