IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2003 Session

## CHRISTOPHER G. RYAN
v.
## JAMES W. SURPRISE AND JOHNSON, GRUSIN, KEE & SURPRISE

**Appeal from the Circuit Court for Shelby County**
**No. 305916-6 T.D.     George H. Brown, Jr., Judge**

_____

**No. W2001-02853-COA-R3-CV - Filed August 27, 2003**

_____

This case involves discovery sanctions. The plaintiff sued the defendants, a lawyer and his law firm, for legal malpractice. The plaintiff requested certain documents from the defendants at least three times, which were not produced. The trial court ordered production of the documents at a deposition. The documents were not produced at the deposition. Twenty-eight days after the deposition, on the eve of a hearing on the defendants' alleged discovery abuses, the documents were produced. In response to the plaintiff's request for sanctions, the trial court ordered that the defendants pay the plaintiff's attorney a monetary sanction. The defendants appeal, arguing that the imposition of the sanction was an abuse of discretion, because there was no evidence indicating the amount of attorney time spent on the alleged discovery abuse and, therefore, no evidentiary basis for the amount of the sanction. We vacate the order of the trial court and remand for further proceedings, because the record does not support the trial court's award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Richard Glassman and Douglas Hanson, Memphis, Tennessee, for the appellant, James W. Surprise and Johnson, Grusin, Kee & Surprise.

R. Sadler Bailey and Christopher M. Robinson, Memphis, Tennessee, for the appellee, Christopher G. Ryan.

**OPINION**

In 1988, Plaintiff/appellee Christopher G. Ryan ("Ryan") engaged Defendant/appellant James W. Surprise ("Surprise"), a Memphis attorney, to represent him in a lawsuit to collect on a promissory note. Surprise obtained a judgment on the promissory note in favor of Ryan. Surprise told Ryan that the judgment would be valid for only ten years and that, to remain enforceable beyond the ten-year period, it would have to be revived prior to the ten-year expiration date.

In 1998, Ryan alleges that he contacted Surprise by telephone and mail regarding the judgment, which was soon to expire. Ryan contends that Surprise did not respond to Ryan's attempts to contact him, and the judgment lapsed prior to being revived. As a result, Ryan filed a lawsuit against Surprise and his law firm, alleging legal malpractice and seeking $500,000 in compensatory damages and $500,000 in punitive damages jointly and severally from Surprise and his firm.

In a request for production of documents made on December 13, 1999, Ryan's counsel requested certain billing documents from Surprise's counsel. The documents were pertinent to the issue of whether a continuing attorney-client relationship existed between Ryan and Surprise at the time the judgment lapsed. The documents produced by Surprise in response to the request did not include the billing records.

On May 19, 2000, Ryan notified Surprise that his deposition would be taken on May 25, 2000. The notice requested that Surprise produce the billing records sought in the prior request for documents. Surprise did not bring the requested billing records to the deposition. In response to questions in the deposition, however, Surprise testified that he had reviewed the billing records in preparation for his deposition testimony.

In May 2001, Ryan served on Surprise a "Notice to Take Deposition of Rule 30(B)(6) Corporate Representative Duces Tecum," which again sought the same billing records. Surprise filed a motion to quash certain portions of the notice. On June 20, 2001, after a hearing, the trial judge ordered that the disputed billing documents be produced at the Rule 30(b)(6)[1] deposition. At the Rule 30(b)(6) deposition on August 22, 2001, the disputed documents were not produced.

Following Surprise's failure to produce the documents as set forth in the trial court's June 20, 2001 order, Ryan moved for discovery sanctions, including default judgment. The hearing on the sanctions was scheduled for September 20, 2001. On the afternoon of September 19, 2001, Surprise's attorney told counsel for Ryan that the documents in question had been located. They were delivered to Ryan's counsel that day.

At the hearing the following day, Ryan's counsel argued stridently that his client should be granted a default judgment based on the failure to produce the oft-requested billing records until the

---

[1]Rule 30.02(6) of the Tennessee Rules of Civil Procedure.

eve of the hearing for sanctions. He asserted that Surprise's counsel should be penalized for this latest in "a never ending stream of problems" not set forth in the record, such as failing to produce documents on numerous occasions and improperly identifying expert witnesses. Accusations and hyperbole were abundant. During the argument, the trial judge patiently admonished Ryan's counsel to "talk a little more civil," describe the prior events in "less melodramatic and more professional tones," and "elevate [the conversation] just a little bit more." Indicating a reluctance to grant the request for default judgment, the trial court asked Ryan's counsel what other sanctions would be appropriate. In response, Ryan asked that one or both of Surprise's experts be excluded from testifying, and also asked for "an extreme monetary sanction."

In response to Ryan's argument, counsel for Surprise explained that the documents Surprise reviewed prior to his deposition were misfiled after he reviewed them. He asserted that, despite a diligent search, they could not be located until the day just before the hearing. He noted that counsel for Ryan did not file a motion to compel production of the documents, and the documents were not the subject of a court order until the August 22, 2001 Rule 30(b)(6) deposition. Consequently, the documents were produced only twenty-eight days after Surprise was ordered by the court to do so. Surprise's counsel argued that the appropriate penalty, if any, should be monetary sanctions in the form of attorney's fees for opposing counsel's time consumed pursuing the documents.

Telling the attorneys that he was not inclined to grant a default judgment, the trial court again asked counsel for Ryan about suggested alternatives. Ryan's counsel responded:

Mr. Bailey: I want a monetary sanction of $25,000.00. That's what I think is an appropriate monetary sanction for abuse that has been going on for years.

The Court: Well, how do you arrive at that?

Mr. Bailey: I arrive at that with basically if I were – if I were asked how many hours have been devoted by my firm to all of these types of things, how many hours coming down here, probably 50 hours total, okay, which at my hourly rate of [$]250 would be $12,500.00, all right.

I think there ought to be a lodestar application here that we ought to get more than our hourly rate because I can assure you that there are a lot better ways to make $250.00 than to deal with these kinds of issues which are acrimonious, tension filled, difficult. . . .

\*   \*   \*

This sanction needs to be significant enough to send them a message that you're not going to tolerate this anymore. And that message would reverberate through the halls of this courthouse and put a stop to a lot of these things.

In response, counsel for Surprise argued:

> Mr. Glassman: Under the issue of monetary sanctions, the proper procedure I believe would be to have a writ of inquiry at some point in the future where Mr. Bailey can be examined about how much time he spent on this one issue.
>
> He's talking about a lot of different issues. He hasn't spent a hundred hours on this one issue about these documents. He's talking about everything else that he's filed in the case, and Your Honor hasn't even heard those motions yet. You may find that they have no basis or merit.

The trial judge continued the argument to the scheduled date of the trial, the following Monday, cautioning both attorneys:

> As I indicated to you . . . a few minutes ago, the bar for civility and courtesy is going to be way up here. And those who fall below it I'm telling you right now I'm going to hit it where it . . . hurts. And I know that you lawyers are not hundred dollar an hour lawyers, so a hundred dollars doesn't mean much to you guys. So I have to, you know, up the bar in order to get your attention.
>
> So I want you to think about it over the weekend and ask yourselves how much is it worth to you to direct your barbs and disparagements to the other individual.
>
> And to the extent to which you want to do it, I'm going to let you do it, but it's going to be like a cash register. It's going to go cha-ching, cha-ching, cha-ching. All right.

At that point, the proceedings were concluded.

The record before this Court does not include a transcript of the proceedings the following Monday, the scheduled trial date. From the record, however, it appears that, among other determinations,[2] the trial court denied Ryan's counsel's request for default judgment, and Ryan voluntarily dismissed his lawsuit. Subsequently, Surprise moved for discretionary costs in the amount of $2,282.85, pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure. The

---

[2]Ryan also filed five motions in limine, a motion to exclude expert witness testimony as untimely and unreasonable, and a motion to strike certain of the defendant's supplemental responses to interrogatories. Surprise, in addition to the motion for discretionary costs, also filed a "Motion to Quash Certain Portions of Plaintiff's Notice to Take Deposition Duces Tecum and to Relieve Defendants of the Obligation to Comply Therewith."

hearing on the alleged discovery abuse that is the subject of this appeal was apparently postponed until October 2, 2001.

At the October 2, 2001 hearing, denunciation and bombast were again plentiful. In the course of a lengthy invective on his efforts to bring the case to trial and Surprise's alleged repeated obstruction of these efforts, counsel for Ryan addressed on occasion the issue of the amount of time he spent on the discovery abuse at issue in this appeal:

> Mr. Bailey: Judge, I can't begin to describe the amount of work that is required in a case such as this, because of the extent of the discovery abuse. So I don't know.
>
> *  *  *
>
> I think, Your Honor, that the sanction needs to be just like you said, it needs to be where it hurts and where it gets their attention. Okay?
>
> How much legal work have I devoted to this case, and I'm basically nowhere as I stand here today? I don't know; $100,000 worth of legal work, probably, has been devoted to fighting Mr. Glassman.
>
> How many hours can I absolutely, positively say ought to be attributable to just these discovery issues here? I think 60. Okay?
>
> *  *  *
>
> . . . So if all you want to do is award sanctions, you know, at least $25,000, $50,000. I mean, what do you think it would take to stop this kind of stuff? I don't know how much money it takes.
>
> *  *  *
>
> We have done absolutely nothing wrong, and we stand here practically broke, beat, whipped, behind the eight ball, everything we could say. My client is – exasperated would be a very mild term, and so am I. A lawyer who's trying to take a case and just do the right thing and get to the truth should not be faced with this.

Surprise's counsel responded:

> Every lawyer is wrong except Mr. Bailey. Mr. Bailey is always right. Mr. Bailey files more motions in these courts than a dozen other lawyers put together, plaintiff or defense. Mr. Bailey needs to adjust his attitude and his method of trying lawsuit. He needs to take a vacation. He needs to relax. He needs to try his lawsuits

and not get caught up in his – I hate to use the word hatred, but it's almost that, of me and other lawyers that he practices against.

If Mr. Bailey leaves this courtroom and would slip and fall, I would be to his aid. If he had a flat tire, I would stop and help him change that, because we are all lawyers at the bar.

Counsel for Surprise argued that Ryan did not take a non-suit because of the discovery issues, but for other unknown reasons, and emphasized that the disputed documents were produced twenty-eight days after the trial court's order required their production. He again asked for a writ of inquiry on the amount of time Ryan's counsel spent on the discovery abuse at issue.

The trial judge tried once again to find out from Ryan's attorney a basis for an amount of sanctions:

The Court: Well, let me just – the question in my mind now is, as you read, last Thursday I indicated an inclination with . . . regard to sanctions.

Mr. Bailey: Yes, sir.

The Court: And then we set it today. The question is: How should it be computed? . . . I think I hear Mr. Glassman suggesting that a hearing in the nature of an inquiry would be in order to determine exactly how much time was spent on that. Address that. . . .

Mr. Bailey: Well, Judge, if the Court wants me to swear under oath as to what I've done, and tell you how much work I've devoted to this, I'll do the best I can. I have not really kept hours.

The Court: I understand that.

At that point, the trial judge issued his ruling. He first denied Surprise's motion for discretionary costs and ordered Surprise to pay Ryan's counsel $6,000 in sanctions. The trial judge stated:

I'm going to first deny Mr. Glassman's motion for discretionary costs. Based on all that I've heard about the whole – this matter of discovery and the failure to respond and who did what and who failed to do what, the Court is going to levy sanctions against . . . the defendant, Mr. Surprise in the amount of $6,000, with the proviso that each of you parties will have an opportunity at a later time, if you so choose, to submit to the Court why that amount should be that amount, or should be an increased amount, or a lesser amount.

And, of course, you lawyers also have the power to remove that question from the bosom of the Court through your own cooperation – you see hope springs eternal – and determine whatever or however that ought to be dealt with, which makes it academic for you to come back before me.

The written order was entered on October 15, 2001, stating:

> 1) Defendant Surprise is required to pay sanctions in the amount of $6,000.00 to Plaintiff's counsel, R. Sadler Bailey.
>
> 2) The Defendant has the right to file a memorandum and to seek a reduction of the amount of these sanctions, with a deadline for filing of Tuesday, October 9, 2001.
>
> 3) The Plaintiff has the right to file a reply memorandum and to seek an increase of these sanctions, with a deadline for filing of Tuesday, October 16, 2001.

Thus, the trial court awarded Ryan's counsel $6,000 in discovery abuse sanctions and allowed each party to submit a brief arguing for an increase or decrease in the amount of the sanction. The record does not indicate any subsequent changes in the trial court's October 15, 2001 order. From that order, Surprise appeals.

On appeal, Surprise argues that the amount of the sanctions was excessive and arbitrary and that the trial judge had no basis for the amount of the attorney's fees awarded. He also asserts that he should have been given the opportunity to cross-examine Ryan's counsel regarding the efforts he expended to procure the billing documents at issue. Ryan contends that the monetary sanction should be affirmed. On cross-appeal, he submits that the trial court erred in refusing to grant him a default judgment pursuant to Rule 37 of the Tennessee Rules of Civil Procedure.

Trial courts are afforded great latitude in fashioning discovery sanctions. *Vanderbilt Univ. v. Techgem Diamond Tools, Inc.*, No. M2001-02505-COA-R3-CV, 2002 Tenn. App. LEXIS 929, at *9 (Tenn. Ct. App. Dec. 31, 2002); *Pettus v. Hurst*, 882 S.W.2d 783, 787 (Tenn. Ct. App. 1993); *see also Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). On appeal, the exercise of the trial court's broad discretion will not be overturned absent an abuse of that discretion. *Potts v. Mayforth*, 59 S.W.3d 167, 171 (Tenn. Ct. App. 2001); *see Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998).

Rule 37.02 of the Tennessee Rules of Civil Procedure addresses sanctions for discovery abuse. It states:

> If a deponent; party; an officer, director, or managing agent of a party; or, a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule

37.01 or Rule 35, or if a party fails to obey an order entered under Rule 26.06, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35.01 requiring the party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both *to pay the reasonable expenses, including attorney's fees, caused by the failure*, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Tenn. R. Civ. P. 37.02 (emphasis added). Thus, Rule 37.02 gives the trial judge considerable discretion, stating that the trial court "may make such orders in regard to the failure [to obey an order to provide or permit discovery] as are just." It enumerates several types of appropriate sanctions. The enumerated sanctions do not expressly include monetary sanctions. Rule 37.02 further states that "in lieu" of the enumerated sanctions, or "in addition" to them, the trial court "shall require" the sanctioned party or his attorney "to pay the reasonable expenses, including attorney's fees, caused by the failure," unless such an award would be unjust.

We first address the issue of whether a sanction was warranted in the case at bar. Here, Ryan filed a request for the documents seeking, *inter alia*, the billing records, on December 13, 1999. The billing records were sought once again at Surprise's deposition, held on May 25, 2000. Surprise indicated in his deposition that he reviewed the billing records prior to his deposition; however, they

were purportedly misfiled thereafter and he was unable to provide them to Ryan's counsel. The documents were requested a third time in the notice for the Rule 30(b)(6) deposition, held on August 22, 2001. At that time, there was a court order in place requiring production of the billing records. They were not produced at the Rule 30(b)(6) deposition. Twenty-eight days after the deposition, the day before the trial court held a hearing on Ryan's motion for discovery sanctions, the billing records were finally produced. Considering all of the circumstances, we cannot find that the trial court abused its discretion in determining that a sanction for failure to timely produce the billing records was warranted.

Ryan argues that the trial court erred in declining his request for a default judgment against Surprise as a sanction for Surprise's failure to timely produce the documents. We find no abuse of discretion in the trial court's decision not to enter a default judgment against Surprise.

We next address the issue of whether the record supports an award to Ryan's counsel of $6,000. The $6,000 award appears in this case to be an award of attorney's fees for the discovery abuse, although it could be argued that it was simply a monetary sanction. Rule 37.02 of the Tennessee Rules of Civil Procedure contemplates, and the caselaw supports, a monetary award of "reasonable expenses, including attorney's fees, caused by the failure [to produce the documents]." *See Tipton v. Quinn*, No. M1998-00951-COA-R3-CV, 2001 Tenn. App. LEXIS 211, at \*47-49 (Tenn. Ct. App. Mar. 28, 2001) (finding no abuse of discretion in the trial court's order to pay $750 in attorney's fees "for the preparation and argument of the Motion for Sanctions against the Defendant."); *Ravenwood Phase II Homeowners Ass'n v. Franklin Prop. I, Ltd.*, No. 03A01-9705-CV-00156, 1997 Tenn. App. LEXIS 566, at \*3-4, 7-8 (Tenn. Ct. App. Aug. 26, 1997) (finding that the trial court did not abuse its discretion in awarding one party and its attorney $1,976.70 in sanctions) *Mansfield v. Mansfield*, No. 01-A-01-9412-CH-00587, 1995 Tenn. App. LEXIS 723, at \*15-23 (Tenn. Ct. App. Nov. 3, 1995); *State v. Cox*, 540 S.W.2d 357, 364-67 (Tenn. Ct. App. 1991); *State v. Lehman*, No. 01-A01-9011-CV-00396, 1991 Tenn. App. LEXIS 601, at \*21-24 (Tenn. Ct. App. Aug. 2, 1991). Although the language of Rule 37.02 does not exclude a stand-alone monetary award as a sanction for discovery abuse, Ryan has cited no caselaw supporting such an award under Rule 37.

In considering an award of sanctions under Rule 37.02, *Mansfield v. Mansfield*, No. 01-A-01-9412-CH-00587, 1995 Tenn. App. LEXIS 723 (Tenn. Ct. App. Nov. 3, 1995), is instructive.[3] In *Mansfield*, the trial court awarded the wife $5,580 in legal expenses incurred due to discovery abuses performed by the husband and his former lawyer. *Id.* at \*23. The *Mansfield* court first noted that the purposes of Rule 37.02 sanctions were "to secure a party's compliance with the discovery rules, . . . deter other litigants from violating the discovery rules, . . . punish parties who violate the discovery rules," and also to "provid[e] compensation for the expenses caused by the inappropriate conduct." *Id.* at \*14 (citing *Elec. Data Sys. Corp. v. Tyson*, 862 S.W.2d 728, 735 (Tex. Ct. App. 1993) and *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)). The appellate

---

[3] Surprise cites numerous cases regarding an award of attorney's fees not pursuant to Rule 37, such as an award of attorney's fees as an element of damages. These cases are inapposite.

court then stated that "the appropriate amount of legal expenses should be determined using the relevant portions of [Tennessee Supreme Court Rule] 8, DR 2-106(B), the rule generally used by courts when they are required to award reasonable attorneys' fees." *Id.* at \*15. The *Mansfield* court then added that

> [w]hile Tenn. R. Civ. P. 37.01(4) is limited to the expenses incurred in obtaining an order compelling discovery, Tenn. R. Civ. P. 37.02 broadly extends to all "reasonable expenses, including attorney's fees, caused by the failure [to comply with the discovery order]." *The "reasonable expenses" contemplated by the rule include the expenses required to employ other means to obtain the information sought to be discovered.* Thus, federal courts, applying a rule substantially identical to Tenn. R. Civ. P. 37.02, have imposed sanctions for (1) the costs of taking a second deposition when a party improperly refuses to file the first deposition, (2) the costs of taking a deposition after a party improperly destroyed a report, and (3) the costs stemming from a lawyer's discouraging witnesses to provide documents.

*Id.* at \*21-22 (emphasis added) (footnotes omitted). The court of appeals then went on to find that

> Ms. Mansfield incurred additional legal expenses because of Mr. Mansfield's refusal to provide appropriate responses to her interrogatories and her request for production of documents. These expenses relate to (1) drafting and presenting the the [sic] motions to compel, (2) drafting the orders granting the motions to compel, (3) preparing and presenting the authorizations to obtain access to Mr. Mansfield's accounts after he refused to produce his financial records, (4) examining and cataloguing the three boxes of unsorted documents belatedly provided by Mr. Mansfield, and (5) preparing the master list of missing documents ordered by the trial court. Ms. Mansfield's evidence amply documented the cost of these services and provided the trial court with an ample evidentiary basis to determine the reasonableness of the claimed expenses in light of [Tennessee Supreme Court Rule] 8, DR 2-106(B). We find that the record supports the trial court's decision that Ms. Mansfield incurred $ 5,580 in additional legal expenses because of the discovery abuses attributable to Mr. Mansfield and his former lawyer.

*Id.* at \*22-23. Thus, the *Mansfield* court found ample evidentiary bases to support an award to the wife for additional legal expenses incurred in obtaining the requested information and documents.

Also instructive is *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440 (11th Cir. 1985). In *Carlucci*, the plaintiff moved for discovery sanctions. *Id.* at 1443, 1444. The district court awarded the plaintiff $10,000. *Id.* at 1446. The Eleventh Circuit Court of Appeals reversed and remanded the award because the district court "failed to detail the basis for arriving at the sum of $10,000." *Id.* at 1453. The *Carlucci* court found that the district court must "set forth an accounting adequate to justify the figure it adopted" so that a " 'meaningful review may be had on appeal.' " *Id.* (quoting

***Wilson v. Volkswagen of Am., Inc.***, 561 F.2d 494, 505 (4th Cir. 1977)). The Eleventh Circuit Court of Appeals continued:

> The court on remand, upon a full accounting may, in its discretion, determine that a sanction *greater* than $10,000 is warranted. It may also find that the fine is better deemed costs to be paid in full or part to Carlucci and/or her attorney to compensate them for their expenses. We simply are in no position to resolve that question on appeal. Rather, we must reverse and remand on this issue so that the district court may create a record accounting for costs adequate to sustain whatever sanction that court ultimately decides is justified in light of the repeated refusal of Anania to abide by that court's discovery directives.

***Id.*** at 1454. Thus, the court reversed and remanded the award so that the district court could create a record accounting of the costs expended due to the defendant's lawyer's discovery violations.

In the case at bar, the trial court made an earnest attempt to elicit from Ryan's attorney a basis for an award of attorney's fees for his efforts in obtaining the disputed documents. Alas, none was forthcoming. Ryan's attorney spoke at length about a litany of purported discovery abuses by Surprise, none of which are contained in the record before this Court. His responses to the trial judge's inquiries ranged from "I want a monetary sanction of $25,000," to a "ballpark" estimate of fifty hours spent on "all of these types of things," to "$100,000 worth of legal work, probably, has been devoted to fighting Mr. Glassman," to an estimate of sixty hours on "just these discovery issues here," to a statement that no hours had been kept by Ryan's counsel on the case. We can only surmise that the trial judge, believing an award of attorney's fees to be an appropriate sanction, awarded an amount that he believed reflected the amount of time actually spent to obtain the disputed billing records.

Indeed, an award of $6,000 in attorney's fees may in fact be justified. Unfortunately, the record in this case gives this Court no basis for determining this issue. Ryan's response to the trial court's inquiries on the additional hours spent to obtain the documents at issue amounted to little more than arm-waving and "ballparking." It was incumbent on him to provide the trial court with a sufficient evidentiary basis for an award of attorney's fees, and he did not do so.

We decline, however, to adopt Surprise's argument that he is entitled to a "writ of inquiry" and the right to take the deposition of Ryan's counsel regarding the amount of attorney's fees sought.[4] We are mindful that the trial court cannot permit an award of attorney's fees as a discovery sanction to become a time-consuming sideshow, in which an interminable amount of time is spent determining the amount of a sanction for a discovery abuse that itself took unnecessary time from the court. Nevertheless, under ***Mansfield*** and ***Carlucci***, <u>some</u> evidentiary basis is needed to support the trial court's award.

---

[4] In point of fact, the specter of such a deposition in the instant case is abhorrent.

With reluctance and sympathy to the trial court, the cause must be remanded to determine whether an adequate basis for an award of attorney's fees can be supplied, considering the factors set forth in Tennessee Supreme Court Rule 8, DR2-106(B) as well as **Mansfield** and **Carlucci**. If no such basis is supplied, the trial court may, in its discretion, award another type of sanction or decline to award any sanction at all.

The decision of the trial court is vacated and remanded as set forth above. Costs are taxed one-half to the appellants, James W. Surprise and Johnson, Grusin, Kee & Surprise, and their surety, and one-half to the appellee, Christopher G. Ryan, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, J.